# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANTHONY JOHN ROWE** : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | **CIVIL ACTION NO. 13-4094** |
| : | |
| **COMMONWEALTH OF PENNSYLVANIA,** *et al.,* : | |
| **Defendants.** : | |

## MEMORANDUM OPINION

**RUFE, J.**                                                                         **JUNE 19, 2014**

Plaintiff, a prisoner in state custody, filed suit in this Court against various state and local governmental entities asserting violation of rights secured by the United States Constitution.[1] Defendants have moved to dismiss, which Plaintiff opposes, and Plaintiff has raised various motions of his own.  For the following reasons, Defendants' motions to dismiss will be granted.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" lacks enough substance to show that he is entitled to relief.[2]  In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[3]  Courts are not, however, bound to accept as true legal conclusions couched

---

[1] Plaintiff also sued The Depository Trust & Clearing Corporation ("DTCC"), which he alleges is "a registered depository agency providing safekeeping, book entry clearing and settlement of bonds" based in New York.  Compl. ¶ 43(e).

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

[3] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll.*, No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

as factual allegations.[4]  Something more than a mere *possibility* of a claim must be alleged; rather plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[5] The complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[6]  The court has no duty to "conjure up unpleaded facts that might turn a frivolous . . . action into a substantial one."[7] Although the complaints of *pro se* litigants such as Plaintiff are construed liberally, he "still must allege sufficient facts . . . to support a claim."[8]

Plaintiff's Complaint is replete with page after page of nonsensical allegations regarding the satisfaction of judgments and obligations on bonds and other securities, and the filing of financing statements pursuant to the Uniform Commercial Code ("UCC").   Plaintiff seeks a declaration that his rights have been violated and to have this Court: enjoin the Pennsylvania courts to order a satisfaction of judgment; order Defendants to pay Plaintiff damages in the amount of $7.5 billion (plus another $5 billion in punitive damages); order Defendants "to discontinue the judgment lien, thereby releasing him from debt bondage," and enter other declaratory and injunctive relief.

To the extent that the Complaint is comprehensible, Plaintiff alleges that his legal papers have been confiscated; that the prison librarians will not copy his petitions and motions to the courts without reading them first; that legal documents have been confiscated as illegal and against Department of Corrections policies; and that Plaintiff has been charged with misconduct

---

[4] <u>T</u>*wombly*, 550 U.S. at 555, 564.

[5] *Id.* at 570.

[6] *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal quotation marks omitted).

[7] *Id.* (quoting *McGregor v. Indus. Excess Landfill, Inc.,* 856 F.2d 39, 42-43 (6th Cir. 1988)).

[8] *Mala v. Crown Bay Marina, Inc.* 704 F.3d 239. 245 (3d Cir. 2013).

for possession of UCC materials.  Plaintiff  also alleges that the "judgment lien" of a criminal case against "Corey Rowe" has been satisfied pursuant to the UCC and various other statutes but that those Defendants associated with the Pennsylvania courts have failed to enter a "satisfaction and accord" that should, according to Plaintiff, result in his release (or the release of "Corey Rowe") from custody.

As best the Court can determine, Plaintiff's complaint may be related to a variation on a scheme that the Third Circuit has described as follows:

> Evidently, inmates were filing financing statements under Article 9 of the UCC, which sets forth a process for perfecting security interests in property.  These liens and judgments, accessible on financing statement forms, are easy to file. Once registered, however, the fraudulent liens are very burdensome to remove. For example, in a New Jersey incident, criminal defendants registered a fraudulent $14.5 million lien with the New Jersey Department of Revenue against a federal prosecutor and a $ 3.5 million lien against a federal judge for using their "copyrighted" names in court papers and hearings; it took a federal court order to remove them. In addition to the substantial effort and expense required to expunge the liens, the fraudulent filings ruined the victims' credit reports.[9]

The Court of Appeals then explained that:

> Further investigation revealed that various publications were advocating the exploitation of the UCC filing process and provided explicit instructions on how to perfect these fraudulent security interests, including sample financing statements forms. One instruction book, *Cracking the Code*, calls for the use of commercial law to resist authority, including the correctional and judicial systems.  The book adheres to the "Redemptionist" theory, which propounds that a person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard in 1993 [*sic*], and, instead, pledged the strawman of its citizens as collateral for the country's national debt.  Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman. Thereafter, the real person can demand that government officials pay enormous sums of money to use the strawman's name or, in the case of prisoners, to keep him in custody. If government officials refuse, inmates are encouraged to file liens against

---

[9] *Monroe v. Beard*, 536 F.3d 198, 203 (3d Cir. 2008).

correctional officers and other prison officials in order to extort their release from prison.[10]

As a result of such actions, the Pennsylvania Department of Corrections in 2005 "issued a memorandum to all its institutions, declaring as 'contraband' all UCC forms, documents relating to UCC filings, materials on 'redemption' and copyrighting names, and publications regarding the 'redemption or lien filings.'  Specifically, it established that the possession and receipt of these publications violated its policy on inmate mail privilege, DC–ADM 803, which prohibits '[w]ritings that advocate, assist or are evidence of criminal activity or facilitate misconduct.'"[11]

Thus, there is no question that the inspection and seizure of the prohibited UCC-related materials does not constitute a denial of due process both because he had no right to possess such materials in prison and because of post-deprivation remedies that Plaintiff may pursue.[12]  To the extent that Plaintiff alleges that he has been denied access to the courts, Plaintiff must allege "(1) that [he] suffered an 'actual injury'—that [he] lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that [he] has no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit."[13]   The Third Circuit has held that "the argument that [the plaintiff] sought to pursue before the state court— that he is somehow entitled to release from prison because he is a 'Secured Party Sovereign'—is the epitome of frivolous."[14]  This is substantially the argument Plaintiff attempts to raise here, and therefore he fails to state a claim against either those Defendants associated with the

---

[10] *Id.* at n.4

[11] *Id.* at 204.

[12] *Monroe*, 536 F.3d at 206.

[13] *Id.* at 205 (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

[14] *Schlager v. Beard*, 398 F. App'x 699, 701 (3d Cir. 2010) (internal quotation omitted).

Department of Corrections or with the Pennsylvania courts.[15]  With regard to Defendant DTCC, Plaintiff fails to allege a basis for assertion of personal jurisdiction over that Defendant in this Court, or any facts whatsoever suggestive that DTCC has in some way injured Plaintiff, and therefore the claims against this Defendant must be dismissed as well.

In sum, the complaint fails to state a cognizable claim or to meet the basic pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.  It also appears that Plaintiff seeks to obtain damages for claims relating to a successful criminal prosecution without the required showing that the claims terminated in his favor.[16]  Moreover, to the extent that John Anthony Rowe and Corey Rowe are separate people, the former cannot assert claims on behalf of the latter.

Finally, the Court will dismiss the complaint with prejudice.  In civil rights cases, "district courts must offer amendment – irrespective of whether it was requested – when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."[17] The Court holds that amendment of a patently frivolous complaint would be both inequitable and futile.   An order will be entered.

---

[15] The claims against Defendants other than DTCC also would be barred, in whole or in part, by Eleventh Amendment immunity and also as to the Court Defendants, judicial or quasi-judicial immunity (as the actions complained off are essentially judicial, not simply administrative).

[16] *Heck v. Humphrey*, 512 U.S. 477 (1994).

[17] *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

5